DEPRIEST v. PATTERSON.

*Executor—Confederate Money.*

1. An executor during the war took certain notes belonging to the estate of his testator, and substituted for them Confederate money of his own. The notes proved to be worthless; *Held*, that he is chargeable with the scale value of the Confederate money at the date of the attempted substitution.

2. Where an executor swears that certain Confederate money was the property of the estate, but is unable to explain by whom it was paid, or how he is able to remember the character of the fund as being a part of the trust estate; *Held*, not sufficient to relieve him from liability.

This is the defendant's appeal, in the foregoing case.

SMITH, C. J.    Having examined and disposed of those of the defendant's exceptions which, having been sustained by the court, were brought up for review on the plaintiff's appeal, we are now required, on the defendant's appeal, to consider and dispose of those in the series which were over-ruled.    Those are numbered respectively, 2, 5, 6, 7 and 10, and thus set out in the record sent up.

*Ex.* 2.    For that the commissioner erred in not allowing the defendant credit for the sum of three hundred and seventy dollars, as admitted by the plaintiff, in her deposition, to have been paid her in 1860 by defendant, in *full discharge* of her *special* legacy of $300 charged on the land, and in payment to the amount of the $70 overplus, of her claim on her *general* legacy, under the will.

*Ex.* 5.    For that the commissioner erred in not finding *as a fact* that Mary J. King (now Cooper), daughter of plaintiff (sent by plaintiff from Georgia to North Carolina to defendants in 1864 with slaves), was an *agent* of plaintiff, and acted as such agent in *receiving* $500, paid her for plaintiff March 11, 1864, and in *instructing* him (defendant) to keep the residue of what was going to plaintiff in some bank or other safe place till plaintiff called for it or till after the war; when this agency, and acts necessarily implying it, are sworn to by several unimpeached witnesses, and corroborated by the admitted conduct of plaintiff in

*receiving* said $500 when brought her by said Mary J. King (now Cooper), without complaint or objection, as part payment from defendant to her of her claims from her father's estate.

*Ex.* 6. For that the commissioner erred in not holding as *matter of law* that the defendant is exonerated from liability for the sum of $800 balance, kept by him on deposit for the plaintiff, separately from his own funds thereafter, the same being in obedience to, and by instructions of plaintiff, through her said agent Mary J. King (now Cooper).

*Ex.* 7. For that the commissioner erred in charging defendant in *good* money $2,814.46 on the Gray & Baggerly notes, holding him as having collected or as bound to collect these in good money before the war, when they were reported in the *inventory* (filed in 1858) as among the "*bad or doubtful*" debts, and had been placed, by the defendant's testator in his life-time, in the hands of an attorney (Miles Cowles) for collection; when the only evidence of debt on these claims which came to defendant, was the said attorney's receipt for them as being so put in his hands for collection; when defendant never really collected or received, or could collect anything on them; but when defendant has merely agreed, pending this reference, to be bound by the charges of the "*Cowles settlement*," May 10th, 1863, which shows one of said notes $743 principal; interest, $397.50; and the other note $300; interest $138—making, in all, $1,578.50 only chargeable to defendant as of that date, May 10th, 1863, as there is no evidence that he *ever did* or *could* collect it; so that he is only bound to account for what he so admits and as of said date; by the *scale* of Confederate money this amounts to $287, and the interest on the same to February 12th, 1883, is $340.10, making the proper charge on the Gray & Baggerly notes in good money (if anything) $627.10 instead of $2,814.46; the error of the commissioner on this item being $2,187.36 against defendant, one-third of which should come out of plaintiff's claim in this case.

*Ex.* 10. For that the commissioner erred in not holding the defendant exonerated from liability altogether for the money

deposited with C. A. Carlton, depository of the Confederate States in Statesville, the same being, as the defendant testifies, assets of his testator's estate, kept separate and apart from the defendant's own funds, and the deposit having been made under the counsel of A. C. Cowles, proven to have been a good business man.

It is agreed by counsel of plaintiff and defendant, that defendant, that defendant is chargeable with the claims mentioned in exhibit "D," and is not chargeable with any other claims that may appear on inventory "B." This to be without prejudice to either party, plaintiff or defendant, with regards to the character of the funds and the vouchers recited therein are considered in evidence.

*Ex.* 2. The matter of this exception, as far as respects the allowance of this credit in the general administration account, has been discussed in the other appeal and decided in the defendant's favor. It is now presented in a particular aspect, and the exception is that it is not specifically appropriated to discharge a legacy due to the plaintiff, and secured by being made a lien on land. In a clause of the testator's will, he devises a tract of land to the defendant, super-adding these words "with the following exceptions, that he pay out of its value to my two daughters, Eliza R. and Nancy, to each of them, three hundred dollars." The defendant claims a right to have so much of this credit as was required, applied to the discharge of this incumbering bequest, and thereby the land relieved of the burden. The court ruled otherwise, and this is the gravamen of complaint. We should have little hesitancy in passing upon the asserted claim if it were pressed to a determination, but we are relieved from the necessity of considering it, by the frank avowal of the defendant's counsel, that intending and expecting to pay the legacy, he is indifferent whether it retains its force as a lien upon the land, or the lien has been discharged. The judgment of the court below in disallowing the exception will remain undisturbed.

*Ex.* 5 *and* 6. The defendant, on March 11th, 1864, paid to Mary J. King (who by marriage became Cooper), as representing the plaintiff, her mother, the money which was carried and delivered to the latter. The authority to receive the money as a payment on account of the estate is disavowed by both, who then resided in Georgia.

The payment was made on the occasion of a visit of the former to this State with some slaves of the latter to be hired out, when this locality was supposed to be more secure. There was, however, some evidence of such agency in opposition to their testimony, and outside of its exercise by one, and ratification of the other in the acceptance of the fund. At the same time, the defendant having a deposit in bank, of funds which, he says, were of his testator's, but in which he is not sustained by the evidence, amounting to some $1,300, offered to pay three hundred dollars more, which was declined. The parties do not agree as to the reasons for the refusal. The point in the exception is, that this further sum which became wholly worthless by the results of the war, should also be charged to the plaintiff, and the loss fall upon her. The $500 is so charged, mainly because it was received by the plaintiff and put to her own use, independently of a previous authority conferred upon the daughter, and upon testimony, in which the Judge was entirely correct in excluding the additional charge. The ruling upon these exceptions is sustained.

*Ex.* 7. When the defendant took possession of the personal effects of his testator he found among the papers, a receipt for two notes against Baggerly and Gray, given by Miles Cowles, an attorney, for collection. The notes, one for $743 and the other for $300, had been executed many years before. They are enumerated in the inventory among the bad and doubtful debts. They are charged at their face value against the defendant in an account, stated at his instance, of the administration by A. C. Cowles, known as the "Cowles settlement," with interest down to May 10th, 1863.

The respective counsel agreed that the defendant is to be charged with the claims mentioned in this account and with none others. The commissioner reports that the executor substituted his own Confederate money for these notes, and thus charged himself with them, while he testified that they were never collected by him, but in some unexplained way were replaced with a debt of one Thomas Gaither, who went into bankruptcy, and the claims were lost. The commissioner charges these notes at their nominal· value, and in good money. Assuming that the executor undertook to appropriate these notes to his own use, and to substitute Confederate currency instead, which the law did not permit to be done to his advantage, and that the notes remained part of the trust estate, there is no evidence that they were or could be collected, and the defendant swears they were not, nor was the substituted claim against T. Gaither rendered available. So that to pursue the fund, it terminates in an entire loss, and there is no sufficient ground to impute a want of proper care, or negligence, to which the loss can be attributed. Besides supposing him to be the owner of the claims, his personal interest in the result affords some assurance of dilligence in the effort to secure and collect.

The remaining remedy open to the plaintiff is to charge the executor with the value of the Confederate money which he attempts to substitute for the claims, and the executor assents in his said agreement to be so charged. It is reasonable he should be held responsible for the amount with which he is charged in the "Cowles settlement," to-wit: $1,578.50, the amount of principal and interest to May 10th, 1883, and interest on the aggregate principals, $1,043 from that date, reduced by the scale applicable to that month.

*Ex.* 10. The defendant's own testimony as to the funds deposited with C. A. Carlton in the fall of 1863, and the sources from which derived is very unsatisfactory. He states, and perhaps he alone could tell, that he deposited money of the estate, but he is unable to explain by whom paid or how he is able to remember

the character of the fund as being a part of the trust estate. The testimony is not so clear and positive as to warrant the removal of the loss of the excess over the $500 received from the executor by the plaintiff, and we will not disturb the ruling below.

In order to the corrections in the account, rendered necessary by our adjudications upon the exceptions in both appeals, a reference must be made, so that the result may be ascertained, and final judgment rendered.

· The reference will be made to the clerk to reform the account and make report.                              It is so ordered.

NOTE.—In the foregoing opinions the attention of the court is confined to the exceptions in the form in which they are presented by the respective appellants in the record, and we merely pass upon their legal sufficiency. The only exception which directly involves the applicability of the legislative scale, is that of the defendant to the charge against him of the Baggerly notes at their full face value. This exception is sustained. The others are taken to the refusal of the court to allow certain claimed credits in their entireties, and upon which we have ruled without inquiring or intending to decide whether they were or were not subject to the scale, assuming that the account would be re-adjusted upon a proper basis as to these as well as other items not presented for our consideration, the scaling process being applied in proper cases to both sides of the account. We have only disposed of the exceptions, and have not gone outside of these. The plaintiff will, of course, be entitled to her share only of the Baggerly notes.